**In re Tracy RIDGWAY, Debtor.**

**Tracy Ridgway, Plaintiff,**

v.

**United States of America, Defendant.**

**Bankruptcy No. 02–30358.**
**Adversary No. 02–3092.**

United States Bankruptcy Court,
D. Connecticut.

March 14, 2005.

Brian E. Kaligian, Esq., Dey, Smith & Collier, Milford, CT, for Plaintiff/Respondent.

Glenn J. Melcher, Esq., Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for Defendant/Movant.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Chief Judge.

### I. INTRODUCTION

This Memorandum of Decision considers whether the Internal Revenue Service's making of a substitute income tax return upon a debtor's default suffices as a "filed return" for purposes of a dischargeability determination under Bankruptcy Code Section 523(a)(1)(B)(i). This question is presented to the Court on a motion for summary judgment filed by the Defendant United States of America, Internal Revenue Service (hereafter, "IRS").[1] For the reasons which follow, this matter shall be resolved in favor of the Debtor.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

### III. FACTUAL BACKGROUND

The relevant facts are not in dispute between the parties. The following factual background recites verbatim the facts as agreed between the parties in a *Joint Stipulation of Facts* (Doc. I.D. No. 15):

1. The debtor did not file a tax return for his 1991 tax year.

2. The debtor did not file a tax return for his 1992 tax year.

3. As a result of the debtor's failure to file a tax return for his 1991 tax year, and pursuant to 26 U.S.C. Sec. 6020(b), the Secretary of the Treasury from his own knowledge and from such other information as he could obtain through testimony or otherwise, prepared a substitute for return for the debtor for his 1991 tax year.

4. Proper notice of the 1991 tax deficiency was sent to the debtor pursuant to 26 U.S.C. Sec. 6212. The debtor did not respond to the notice of deficiency.

5. After expiration of the period provided in 26 U.S.C. Sec. 6213(a), the Secretary of the Treasury, pursuant to 26

---

1. The record seems to indicate that in light of the parties' stipulation to the relevant factual background, they agreed that this proceeding could be resolved on the basis of *cross* motions for summary judgment. Despite that apparent understanding, the only party to file a summary judgment motion was the Defendant IRS (Doc. I.D. No. 13). Hence, this matter is resolved only with respect to the issues presented by that motion.

U.S.C. Sec. 6213(c), properly made an assessment against the debtor in the amount of $38,060.00 for unpaid tax liabilities and in the amount of $11,542.83 for accrued interest on the unpaid tax liabilities of the debtor for his 1991 tax year.

6. Despite notice and demand for payment, the debtor's 1991 tax liability remains unpaid.

7. As a result of the debtor's failure to file a tax return for his 1992 tax year, and pursuant to 26 U.S.C. Sec. 6020(b), the Secretary of the Treasury from his own knowledge and from such other information as he could obtain through testimony or otherwise, prepared a substitute for return for the debtor for his 1992 tax year.

8. Proper notice of the 1992 tax deficiency was sent to the debtor pursuant to 26 U.S.C. Sec. 6212. The debtor did not respond to the notice of deficiency.

9. After expiration of the period provided in 26 U.S.C. Sec. 6213(a), the Secretary of the Treasury, pursuant to 26 U.S.C. Sec. 6213(c), properly made an assessment against the debtor in the amount of $11,238.00 for unpaid tax liabilities and in the amount of $2,184.65 for accrued interest on the unpaid tax liabilities of the debtor for his 1992 tax year.

10. Despite notice and demand for payment, the debtor's 1992 tax liability remains unpaid.

11. On January 24, 2002, the debtor filed a Chapter 7 Bankruptcy Petition.

## IV. DISCUSSION

### A. Summary Judgment Standards.

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the present proceeding there is no material fact in genuine issue. Therefore the focus of this Court's analysis is upon the question of whether the IRS is entitled to judgment *as a matter of law.*

### B. Dischargeability of Federal Income Tax Obligations—Section 523(a)(1).

■ A debtor in a Chapter 7 case receives a discharge of debts under the authority of Section 727(b) of the Bankruptcy Code, which provides, in relevant part, that *"[e]xcept as provided in section 523* of this title, a discharge ... discharges the debtor from all debts that arose before the date of the order for relief under this chapter ...."* This adversary proceeding concerns the applicability of an exception to discharge for tax debt, Bankruptcy Code Section 523(a)(1), which provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax ...

(A) of the kind and for the periods specified in section ... 507(a)(8) [2] of this title ...;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension,

**2.** This cross-reference is to the Bankruptcy Code's priority claim provisions.

and after two years before the date of the filing of the petition; or

> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . .

11 U.S.C. § 523(a)(1) (2002). Subsections (A), (B) and (C) of Section 523(a)(1) state, disjunctively, three separate bases for the non-dischargeability of tax debts. Only Section 523(a)(1)(B) is implicated in the present proceeding; and the specific substantive inquiry required in assessing dischargeability is whether the United States Treasury Secretary's creation of substitute returns constitutes the filing of tax returns for purposes of Section 523(a)(1)(B).

### 1. Income tax returns and collection under non-bankruptcy law.

Federal law requires that every person liable for payment of federal income tax "make" a return according to the forms prescribed by the Treasury Department. 26 U.S.C. § 6011(a) (1991). When a person defaults in his obligation to make such a return, Internal Revenue Code (hereafter, "IRC") Section 6020 directs a course of conduct by the Treasury Secretary, to wit—

> (a) **Preparation of return by Secretary.**—If any person shall fail to make a return . . . but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, *the Secretary may prepare such return,* which being signed by such person, may be received by the Secretary as the return of such person.

> (b) **Execution of return by Secretary.**—

> (1) **Authority of Secretary to execute return.**—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor . . . *the Secretary shall make such return* from his own knowledge and from such information as he can obtain through testimony or otherwise.

> (2) **Status of returns.**—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020 (1991) (emphasis supplied). A consensual return which the Treasury Secretary "prepare"s, but is "signed" by the taxpayer under subsection (a) of IRC Section 6020, is not implicated in this proceeding.[3] Rather, the subject returns are those that the Treasury Secretary "make"s under subsection (b) of IRC Section 6020 (hereafter, a "Substitute Return").

In general, a tax is not collectible from a debtor until it has been "assessed". *See, e.g., Kurio v. U.S.,* 281 F.Supp. 252 (S.D.Tex.1968) (tax assessment is given the force of a judgment and authorizes administrative officials to seize a debtor's property to satisfy the debt if assessment is not timely paid). A Substitute Return, *inter alia,* provides a basis for a determination of a tax deficiency which, upon notice to the debtor, IRC § 6212(a), and the expiration of a contest period, IRC § 6213(a), results in an assessment of the subject tax, enabling the IRS to engage collection procedures permitted under applicable law. *See* IRC § 6213(c).

---

**3.** Even though the factual stipulation of the parties recites that the Treasury Secretary "prepared" the subject returns, the parties' citation to IRC Section 6020(b) leaves no doubt in the Court's mind, and no genuine issue, that the subject returns are *not* returns under IRC Section 6020(a).

## 2. The contentions of the parties.

Although he cites no *judicial* authority supporting the dischargeability of tax debt for which a debtor failed to file a return, the Debtor appeals directly to the language of the Bankruptcy and Internal Revenue Codes. Indeed, the plain language of the relevant Code provisions is the appropriate starting point, and perhaps ending point, of statutory construction. *See, e.g., Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

The language of the relevant statutes is strongly supportive of the Debtor's position in this proceeding. Specifically, Bankruptcy Code Section 523(a)(1)(B) conditions dischargeability simply upon the *existence* of a filed return, *inter alia;* it does not specify *by whom* that return must be filed. Section 523(a)(1)(B)(i)'s use of an anonymous passive voice—"a return, if required ... was not filed"—is unusual in the Bankruptcy Code generally, and particularly within the tax dischargeability section, *cf.* 11 U.S.C. § 523(a)(1)(C) (subsection specifying *"debtor"* conduct). Thus, one might reasonably conclude that its use by Congressional draftsmen was conscious.

The Debtor also claims support from the Internal Revenue Code. He highlights subsection (2) of IRC Section 6020(b), which states that any Substitute Return "shall be prima facie *good and sufficient for all legal purposes."* (emphasis supplied). The Debtor argues credibly that the use of a Substitute Return for purposes of a bankruptcy dischargeability determination is a "legal purpose".

██ The Debtor's reliance on the apparent plain meaning of these statutes is further bolstered by this Court's obligation to construe exceptions to discharge *narrowly in favor of the debtor,* and confine such exceptions to those *plainly expressed* in the Bankruptcy Code. *E.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996); *Bethpage Federal Credit Union v. Furio (In re Furio),* 77 F.3d 622, 624 (2d Cir.1996).

It is thus surprising for the Court's research to reveal that arguments such as the Debtor's have failed to find support in the rulings of other courts. Indeed, in the few reported cases "on all fours" with the instant proceeding, courts have uniformly ruled against debtors. *E.g., In re Hatton,* 220 F.3d 1057 (9th Cir.2000); *In re Bergstrom,* 949 F.2d 341 (10th Cir.1991); *In re Chapin,* 148 B.R. 304 (C.D.Ill.1992); *In re Pruitt,* 107 B.R. 764 (Bankr.D.Wyo.1989); *In re Hofmann,* 76 B.R. 853 (Bankr. S.D.Fla.1987). The IRS naturally relies upon this case law in opposing the dischargeability of the Debtor's tax debt.

The IRS contends that the Debtor's personal failure to file income tax returns for the subject tax years disqualifies him from a bankruptcy discharge of the subject tax debt under the terms of Section 523(a)(1)(B)(i).[4] In making this contention, the IRS advances arguments which echo three recurring themes from the case law referenced in the preceding paragraph: (i) that a Substitute Return should not be considered a "return" within the meaning of Section 523(a)(1)(B), *see, e.g., Hatton,* 220 F.3d at 1060–61; (ii) that the legislative history of Section 523(a)(1) is overwhelmingly supportive of *debtor* return filing as a prerequisite for tax debt dischargeability, *see, e.g., Chapin,* 148 B.R. at 306–07; and (iii) that strong public poli-

---

**4.** The IRS has not argued non-dischargeability on any basis other than subsection (B) of Section 523(a)(1), *e.g.,* it does not assert under subsection (C) that the Debtor "willfully attempted ... to evade or defeat such tax."

cy considerations support construing Section 523(a)(1)(B) to require *debtor* return filing, *see, e.g., Pruitt,* 107 B.R. at 766. Unfortunately for the IRS, none of these decisional bases can withstand close scrutiny.

### a. Definition of "return".

In arguing that a Substitute Return should not be considered a "return" for purposes of Section 523(a)(1)(B), the IRS relies on a judicially-crafted definition of "return" with origins in non-bankruptcy litigation, but increasingly used by courts adjudicating tax dischargeability cases. The seminal formulation of this definition was developed by the Tax Court in *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573 (1984), which in most judicial formulations consists of the following elements: the subject document must (i) purport to be a return; (ii) be executed under penalty of perjury; (iii) contain sufficient data to allow calculation of tax; and (iv) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *See, e.g., Hatton,* 220 F.3d at 1060.

Utilizing the *Beard* formulation, the IRS reaches a predictable conclusion—that a Substitute Return is not a "return", because, *inter alia,* it is not executed under penalty of perjury and does not represent a *debtor's* honest and reasonable attempt to satisfy the requirements of the tax law. However, reliance upon general definitions, whether codified or formulated by judicial authorities, is misplaced in the present context since the question of whether a Substitute Return is a "return" is answered directly and explicitly by IRC Section 6020(b)(1).

Because "return" is not defined by the Bankruptcy Code, a court weighing the dischargeability of federal taxes under Section 523(a)(1)(B) is compelled to look to the Internal Revenue Code for guidance.

Although the Internal Revenue Code does not define "return" generally, by directing the Treasury Secretary to "make such *return* from his own knowledge [etc.]" (emphasis supplied), IRC Section 6020(b)(1) makes patent that a Substitute Return is a "return", regardless of the judicially-fashioned outer limits of that concept. What Congress has explicitly referred to as a "return" is not appropriately re-characterized by the courts.

It is not surprising, therefore, to find that no reported judicial authority has applied the *Beard* formulation to the precise fact pattern presented here—in which a Substitute Return stands *alone* as the purported "return". Rather, courts utilizing the *Beard* definition in the context of Bankruptcy Code Section 523(a)(1)(B) have done so only in the context of assessing what type of *debtor* conduct and/or submissions, short of filing an official form, might nonetheless constitute a "return" for purposes of the Bankruptcy Code. *E.g., In re Moroney,* 352 F.3d 902 (4th Cir.2003) ("The question is whether Moroney's late-filed forms constitute returns, thus rendering his tax liabilities dischargeable."); *In re Hindenlang,* 164 F.3d 1029 (6th Cir. 1999) (question of whether Form 1040s, filed by a debtor after Substitute Returns and assessment of taxes, were "returns" under Section 523(a)(1)(B)); *see, e.g., Hatton, supra* ("The only question on appeal is whether the substitute return prepared by the IRS, the installment agreement signed by Hatton, or a combination of both, constitute a tax 'return' under 11 U.S.C. § 523(a)(1)(B)"). The question of the sufficiency of a Substitute Return, *standing alone,* is not addressed by the case law, but instead resolved definitely by the language of the Internal Revenue Code.

### b. Legislative purpose of Section 523(a)(1)(B).

Undeterred by the apparent plain language of the relevant statutes, the IRS,

and the cases relied upon by it, also assert that the legislative history of Section 523(a)(1)(B) compels a conclusion that a dischargeable tax debt must be supported by a return *filed by the debtor*, not merely by the Treasury Secretary upon the debtor's default. Nonetheless, this Court concludes that recourse to the legislative history of Section 523(a)(1)(B) is ultimately unenlightening for the purposes of this proceeding. The extant Congressional materials simply do not sufficiently support the IRS's position for this Court to override the clear implication flowing from the plain language of the applicable statutes, which are necessarily subject to narrow construction in favor of the Debtor in this dischargeability proceeding.

■ The process of statutory construction requires this Court to look first to the statutory language itself, and then to the legislative history only if the statutory language is unclear. *See Toibb*, 501 U.S. at 162, 111 S.Ct. at 2200.[5] As stated previously, it appears to this Court that the statutory provisions governing the instant dispute are clear and unambiguous on their face. Bankruptcy Code Section 523(a)(1)(B) conditions dischargeability upon the filing of a "return", without specifying *who* must prepare that return. And there can be no doubt that a Substitute Return is a "return" since IRC Section 6020(b)(1) denominates it as such. Lending even further clarity, IRC Section 6020(b)(2) declares that a Substitute Re-

turn shall be "prima facie *good and sufficient for all legal purposes*." (emphasis supplied). Given this clear and compelling statutory framework, it should be unnecessary to resort to an examination of legislative history to determine the intended scope of Bankruptcy Code Section 523(a)(1)(B). Nonetheless, assuming, without deciding, that the applicable statutory framework is unclear in some respect,[6] this Court will survey in rough chronological order the legislative material germane to Section 523(a)(1)(B), to determine if any of that material compels a result different from the one which is suggested by the plain language of the applicable statutes.

### i. The Bankruptcy Act.

The first stop along the relevant chronology is the Bankruptcy Act of 1898 (hereafter, the "Act" or "Bankruptcy Act"). Specifically, the Court notes that the lineage of Code Section 523 can be traced back to the tax dischargeability provisions found at Section 17 of the Act. Just prior to the enactment of the Bankruptcy Code, Section 17, as codified, provided in pertinent part as follows:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt ... within three years preced-

---

5. The Supreme Court has also acknowledged that in "rare cases" the literal application of a statute may produce a result "demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). In such cases, the intention of the drafters, rather than the strict language, should control. *Id.*

6. The only terms which this Court might view as ambiguous are the words, "file" or "filed",

since the relevant IRC sections utilize the alternative terms, "made" or "make" to denote similar activity. *E.g.*, 26 U.S.C. §§ 6011(a), 6012(a), 6020 (2002). However, the Court need not delve into that area of construction since the IRS' written submissions admit that the Treasury Secretary "files" Substitute Returns. *E.g.*, *United States of America's Memorandum in Support of Summary Judgment* (Doc. I.D. No. 14) at 4.

ing bankruptcy: *Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law,* (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat . . . .

11 U.S.C. § 35 (1977) (emphasis supplied).

This historical provision is enlightening for the current dispute in at least two respects. First, it highlights a change in specification in the return filing "requirement". Whereas Section 17 of the Act made clear that the relevant return filing was that done (or not done) by the "bankrupt",[7] under current Code law the identity of the return filer is not specified. Under traditional canons of construction one could argue forcefully that such a conspicuous change from prior law strongly implies that Congress intentionally broadened the scope of the statute to make relevant to tax dischargeability returns filed by entities other than the debtor, namely those made by the Treasury Secretary. This implication seems even more reasonable in the context of Section 523(a)(1) as a whole, since in subsection (C) thereof Congress plainly demonstrated its ability to specify a *debtor* filing where a

specification of that nature was warranted and/or desired.

The second, and more fundamental, insight to be gleaned from a review of Section 17 of the Bankruptcy Act is that, contrary to common understanding, *the Act actually permitted a debtor to discharge certain taxes for which he failed to file a return.* This is true because the key to dischargeability under the Act was the timing of the *assessment* of taxes, not the *filing of returns.* Read as a whole, Section 17a(1) of the Act established the following scheme for the dischargeability for taxes:

● taxes "which became legally due and owing" within the three-year period immediately preceding bankruptcy could not be discharged, even if timely returns were filed by the debtor; and

● as to taxes outside the three-year non-dischargeability "window"—

(i) if a non-fraudulent and non-evasive (and presumably timely) return was filed by the debtor, full dischargeability was available; and

(ii) even where a debtor "failed to make a return", dischargeability was also possible, but only in those instances in which the IRS *assessed* the subject tax more than one year prior to the bankruptcy filing.

Thus under the Act, when a bankrupt did not file a tax return, he was nonetheless eligible to discharge the subject taxes, so long as the IRS had assessed those taxes *and* enjoyed one full year of collection opportunity. Accordingly, the object and emphasis of Bankruptcy Act law in this area does not appear to have been on punishing a debtor's non-fraudulent failure to file a timely return. Rather, it seems to

---

**7.** The Bankruptcy Act's term, "bankrupt", is synonymous with the Bankruptcy Code's term, "debtor". For clarity of presentation, this Memorandum of Decision will utilize the term "debtor" uniformly, even when referring to the subject of a Bankruptcy Act case.

have been focused upon the pragmatic goal of providing the IRS with an adequate period of time to collect taxes before allowing them to be discharged in bankruptcy.

In light of the foregoing, it is evident that if the present proceeding were decided under the dischargeability standards of the Bankruptcy Act, the Debtor would prevail.[8] Hence, the question becomes what elements, if any, of the Bankruptcy Code and/or the history of its enactment plainly evidence a Congressional intention to narrow pre-Code tax dischargeability law by, *inter alia,* requiring that a debtor *personally* file returns as an absolute prerequisite to dischargeability? This Court concludes that there is no clear indication in the Bankruptcy Code's legislative history, reviewed below, that Congress chose to replace its practical, assessment-based approach with a scheme that was more penal in nature with respect to non-fraudulent tax return non-filers.

### ii. The Bankruptcy Commission Report.

In 1970, Congress determined that the Bankruptcy Act was likely in need of significant overhaul. In that year it established the Commission on the Bankruptcy Laws of the United States (hereafter, the "Commission"). Act of July 24, 1970, Pub.L. No. 91–354, 84 Stat. 468. The charge of the Commission was to study, analyze, evaluate, and recommend changes in the substance and administration of the bankruptcy laws of the United States. *Id.* After two years of study and analysis the Commission filed with Congress a report of its findings and recommendations—*Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137, 93d Cong., 1st Sess. (1973) (hereafter, the "Commission Report").

The Commission's recommendations with respect to the dischargeability of taxes did not propose to alter the pragmatic approach of the Bankruptcy Act with respect to the tax return filing. Although the Commission's recommendations on exceptions to discharge generally included both expansions and restrictions of the classes of non-dischargeable debts, the general tenor of the Commission Report, and the specific action proposed regarding taxes, can be fairly characterized as debtor-friendly.[9] Specifically, the Commission's Draft Code provided in pertinent part as follows:

(a) *Exceptions from Discharge.* A discharge extinguishes all debts of an individual debtor, whether or not allowable, except the following:

---

**8.** This hypothetical conclusion assumes a fact not stipulated by the parties—that the assessment of the relevant taxes occurred more than one year prior to the commencement of this bankruptcy case.

**9.** In this regard the Commission Report summarizes as follows:

The Commission also recommends that the discharge no longer be restricted to certain debts, e.g., provable debts, but extend to all debts of an individual debtor, *with the exceptions from discharge in the present Act substantially continued.* The more important changes recommended as to the exceptions are a *reduction, generally, of the period of accumulation of nondischargeable taxes,*

and the elimination of the false financial statement exception as to consumer debts. On the other hand, the Commission recommends several additions to the excepted debts in an effort to cope with potential abuses that have come to the attention of the Commission.

\*   \*   \*   \*   \*   \*

The Commission is of the opinion ... that *the exception from discharge of tax claims for a period of three years is too substantial, and in furtherance of the "fresh start" goal the Commission recommends that the period be reduced to one year.*
Commission Report, Part I, Chapter 7.C.2. (emphasis supplied).

(1) any liability for taxes with respect to which (A) a priority is granted under section 4–405(a)(5), (B) *a return, if required to be filed, was not filed more than one year prior to the date of the petition,* or (C) the debtor made a false or fraudulent return or willfully attempted in any manner to evade or defeat . . . .

Commission Report, Part II, Section 4–506(a)(1) (emphasis supplied).[10] Thus, the Commission's Draft proposed to alter the structure and mechanics of Bankruptcy Act Section 17a(1) in significant respects. First, the general non-dischargeability reach-back period was circumscribed by reference to, and incorporation of, the Draft Code's independent priority tax claim provisions,[11] rather than through internal definition, as had been the case under Act Section 17a(1). Second, while the focus of dischargeability remained upon the IRS's opportunity to collect, the concept utilized to express that goal became *return filing* rather than *tax assessment.* Significantly, although a timely *return*—rather than *assessment*—became the *sine qua non* of dischargeability, the Commission broke with the Bankruptcy Act by not denominating the relevant return as a *debtor's* return.

### iii. *Congressional Action on the Commission's Recommendations.*

The Commission's Draft Code became the substance of a House of Representatives' bill—H.R. 10792—introduced during the 93d Congress to implement the recom-mendations of the Commission (hereafter, the "Commission Bill"). Thereafter, the National Conference of Bankruptcy Judges, disagreeing with major aspects of the Commission Bill, drafted and proposed an alternative (hereafter, the "Judges' Bill"). The Judges' Bill was also introduced in the 93d Congress, as H.R. 16643. In the 94th Congress, both of these bills were again introduced, as H.R. 31 and H.R. 32, respectively. The House conducted extensive hearings on both bills, at the conclusion of which a fresh, consolidated bill was drafted and introduced in the 95th Congress as H.R. 6. That bill was itself subjected to extensive mark-up and amendment, and ultimately introduced as a clean bill—H.R. 8200 (hereafter, the "House Bill").

Section 523 of the House Bill addressed the dischargeability of taxes with the following provisions—

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(1) for a tax—

(A) of the kind and for the periods specified in section 507(6) of this title . . .;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after one year before the date of the filing of the petition; or

---

10. Note 6 to Section 4–506 provides, *inter alia,* that "[c]lause (B) of this clause is added to provide nondischargeability but not priority for a tax claim, for whatever tax period or wherever [sic] first payable, for which a return is not filed before a date one year preceding the date of the petition."

11. Under Draft Code Section 4–405(a)(5) the Commission proposed a distributional priority for income tax claims "for any taxable period ending on or prior to the date of the petition for which a return was required to be filed on a date (including any extensions of time for filing) within one year prior to the petition or thereafter".

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat ....

H.R. 8200, Section 523(a)(1) (1977).

The House Bill's version of Section 523—which is nearly identical to the codified version of Bankruptcy Code Section 523 applicable to the present proceeding—presents a slightly different statutory structure from that employed in the Commission's Draft. However, for purposes of the issue *sub judice*, the substance of the House Bill did not vary materially from the Commission Draft—it continued a pragmatic scheme which did not specify the identity of the required return filer.

The extensive report which accompanied the House Bill out of the Judiciary Committee, *Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200*, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) (hereafter, the "House Report"), does not discuss the question before the Court. That silence is telling; if in fact the purpose of return filing vis-a-vis tax dischargeability had evolved from one serving the pragmatic objective of tax collection to one directed toward a goal of penalizing a non-filer, one would naturally expect to find comment in that vein within the voluminous House Report. The absence of such editorial material is even more conspicuous in light of the reform principles animating the enactment of the Bankruptcy Code in the late 1970s, to wit—"[t]his bill makes bankruptcy a more effective remedy for the unfortunate consumer debtor." *Id.*, at 4, U.S.Code Cong. & Admin.News 1978, pp. 5963, 5966.

Passage by the Senate of its own version of bankruptcy reform legislation lagged behind that of the House. On July 14, 1978, well after the full House of Representatives had passed the House Bill, the Senate Committee on the Judiciary (hereafter, "Senate Judiciary Committee") favorably reported S. 2266, the analogous Senate bill (hereafter, the "Senate Bill"). The text of Section 523(a)(1) of the Senate Bill was substantially similar to the corresponding section of the House Bill. The only textual differences with potential relevance to the issue at bar were the following: (i) the size of the pre-petition period before which an untimely return must be filed to afford the debtor a discharge of the subject taxes (the House Bill allowed only one year, while the Senate Bill stipulated three years); [12] and (ii) the state of mind required for non-dischargeability based upon tax evasion (the House Bill reached a "willful" attempt to evade or defeat a tax, while the Senate Bill required that the attempt be "fraudulently" motivated).[13]

In connection with its reporting of the Senate Bill, the Senate Judiciary Committee prepared and published a Report, *Report of the Committee on the Judiciary, United States Senate, to Accompany S. 2266*, S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) (hereafter, the "Senate Judiciary Report"). In the description of its proposed version of Section 523, the Senate Judiciary Report makes the following statement: "Also included in the non-dischargeable debts are taxes for which the *debtor* had not filed a required return as of the petition date, or for which a return had been filed beyond its last permitted due date (§ 523(a)(1)(B))." *Senate Judiciary Report*, at 78, U.S.Code Cong. & Ad-

---

12. The eventual enactment and codification of Section 523(a)(1)(B)(ii) represented a compromise at two years.

13. The eventual enactment and codification of Section 523(a)(1)(C) embraced the House concept of "willful" evasion.

min.News 1978, 5787, 5864 (emphasis supplied) (hereafter, the "Senate Judiciary Clause"). This clause is notable,[14] if only for the fact that it represents the first occurrence in the legislative materials of a statement which might be construed to support the proposition that a debtor must *personally* file a return to be entitled to a discharge of taxes. However, the Senate Judiciary Clause is oddly matter-of-fact in its debtor filing specification; it does not mention the issue presently at bar or even the possibility of a Substitute Return. One would expect more discussion or explanation, given the groundbreaking nature of a requirement of debtor return filing. The Senate Judiciary Clause is also incongruous with the Senate Judiciary Report's foregoing, and more comprehensive, description of the practical and philosophical underpinnings of the tax dischargeability provisions of the Senate Bill, to wit:

A three-way tension ... exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) *the debtor, whose "fresh start" should likewise not be burdened with such an accumulation;* and (3) *the tax collector, who should not lose taxes which he has not had reasonable time to collect* or which the law has restrained him from collecting.

In balancing these interests, ... [the House Bill] gives governmental units a priority claim on assets of a debtor's estate for certain taxes which have not grown so "stale" as to constitute an unjustifiable burden on general unsecured creditors who may have extended new

credit to the debtor since the tax liabilities arose. *To avoid unduly burdening the debtor's fresh start, the bill continues the basic coordination of priority and discharge provisions that apply to taxes,* so that unpaid taxes accorded priority are nondischargeable, and tax claims which are not given priority are with some exceptions not collectible from the debtor's post-bankruptcy assets.

\* \* \* \* \* \*

*In general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrongdoing or serious fault as, for example, taxes with respect to which the debtor filed a fraudulent return.*

Senate Judiciary Report, at 14, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5800 (emphasis supplied) (hereafter, the "Policy Statement").

The Policy Statement is consistent with the tax dischargeability law's longstanding practical focus on the *staleness* of the tax claim, as measured by the taxing authority's *opportunity* to collect, not on the *identity* of the actor who triggers those collection rights through return preparation and filing. Nothing in the Policy Statement's language signals a change of approach.

While one might argue that the Policy Statement's identification, as non-dischargeable, of taxes "to whose staleness the debtor contributed by some wrongdoing or serious fault ...." implicates a debtor's non-filing conduct, such a reading is ultimately not supportable. While a

---

**14.** The Senate Judiciary Clause is also imprecise, in that it states that non-dischargeable taxes include those for which a return has been filed "beyond its last permitted due date." In fact though, the Senate Bill allowed a discharge of taxes for which there was a late-filed return, so long as the return was filed before three years before the petition date. This lack of precision naturally undermines the reader's confidence in the accuracy of the clause as a whole.

debtor's passive non-filing behavior *might* be fairly termed "wrong-doing" in its broadest sense (*i.e.* a failure to do "right"), if the Senate Bill truly intended to break from then-existing law by rendering such conduct discharge-preclusive, it is odd that the Policy Statement would use the example of a "fraudulent return" to illustrate the concept. The fraudulent return exception has been a consistent component of proposed and enacted tax dischargeability schemes since the time of the Bankruptcy Act. *E.g.,* 11 U.S.C. § 35(1)(d)(1977); Commission Report, Part II, Section 4–506(a)(1)(C); H.R. 8200, Section 523(a)(1)(C); S. 2266, Section 523(a)(1)(C); 11 U.S.C. § 523(a)(1)(C) (2002). So, if a *new* class of "wrong-doing" were being added at the non-fraudulent margin of that concept, one would expect the Policy Statement to offer an example of that new class of conduct, so as to illustrate the *full* scope of the newly-broadened concept.

The Policy Statement clearly and concisely summarizes the philosophy of a tax dischargeability scheme in which the debtor's failure to file a return is not alone grounds for a determination of non-dischargeability. The Policy Statement reveals the Senate Bill's proposed legal scheme to be premised on tenets analogous to those developed by courts under their equity jurisdiction. The primary concept is consistent with the doctrine of laches—*i.e.* a taxing authority will not be entitled to the benefit of non-dischargeability, *inter alia,* if it is not diligent and allows its claim to go stale. Consequently, the law will punish a debtor's conduct with respect to a taxing authority's claim only when such conduct "contributes" to the staleness of that claim. In essence, concepts akin to "equitable estoppel", and/or "equitable tolling" of laches, underlie the relief granted to a taxing authority whose collection efforts have been prevented or obstructed by debtor misconduct. By way of illustration, a debtor who has filed a *fraudulent* return has taken action which affirmatively frustrates a taxing authority's ability to assess and collect the true tax. By contrast, the passive, non-fraudulent *failure* to file a tax return does not impair or impede a taxing authority's ability to assess and collect because the authority can proceed on the basis of its own, substituted return.[15]

In light of the foregoing, this Court views the Senate Judiciary Report, as a *whole,* as not supportive of the statutory construction urged by the IRS. The issue at bar is an arcane one, which the draftsmen of the Senate Judiciary Report could well have failed to appreciate or anticipate. Thus the Senate Judiciary Clause's use of the modifier, "debtor", could well have been non-purposeful and innocuous, springing simply from a failure to appreciate the substituted return possibility. Instead, this Court looks to the Report's Policy Statement as a reflection of the Senate Bill's intention not to change radically the historically pragmatic scheme of tax dischargeability through imposition of a punitive debtor return-filing requirement.

One final element of the legislative record deserves analysis. Prior to its debate and passage by the full Senate, the Senate Bill took a brief detour for review by the Senate Finance Committee. The Senate

---

15. Of course this statement is limited to those authorities which, like the IRS, have available procedures for the administrative preparation and filing of substitute returns for non-return-filing taxpayers. It is also important to appreciate that if a taxing authority does not have substitute return procedures, a non-filing debtor would be ensnared by the non-dischargeability provisions of Section 523(a)(1)(B) because the required return "was not filed", either by the debtor or the taxing authority.

Bill was reported out of that Committee favorably with an accompanying report, *Report of the Committee on Finance, United States Senate, to Accompany S. 2266*, S.Rep. No. 95–1106, 95th Cong., 2d Sess. (1978) (hereafter, the "Senate Finance Report"). In its introductory overview, the Senate Finance Report states certain "Tax Aspects" as follows—

> The bill recognizes that the tax law places numerous restrictions on the collection of taxes. These limitations, which do not encumber private creditors, often complicate the collection of prepetition taxes. S. 2266 also recognizes that tax collection rules for bankruptcy cases have a direct impact on the integrity of Federal, State and local tax systems. To the extent that debtors in bankruptcy are freed from paying their tax liabilities, the burden of making up the lost revenues must be shifted to other taxpayers.

> A three-way tension thus exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) *the debtor, whose "fresh start" should likewise not be burdened with such an accumulation* ; and (3) *the tax collector, who should not lose taxes which he has not had reasonable time to collect* or which the law has restrained him from collecting.

> In balancing these interests, S. 2266 gives governmental units a priority claim on assets of a debtor's estate for certain taxes which have not grown, so "stale" as to constitute an unjustifiable burden on general unsecured creditors (who may have extended new credit to the debtor since the tax liability arose). *To avoid unduly burdening the debtor's fresh start, the bill, with some exceptions, continues the basic coordination of priority and discharge provisions in the case of taxes.*

> \*   \*   \*   \*   \*   \*

> The bill contains several provisions designed to minimize the administrative problems that governmental tax authorities may face in collecting taxes in bankruptcy proceedings, and also contains safeguards to assure normal administrative procedures and to prevent tax avoidance.

Senate Finance Report, at 5 (emphasis supplied) (hereafter, the "Finance Report Overview"). The Finance Report Overview largely parrots the "three-way tension" discussion of the Senate Judiciary Report's Policy Statement, while also, naturally, focusing upon the bill's impact on the federal fisc, and the effectiveness of the Internal Revenue Service. Notably, there is no mention of a concern about bankruptcy abuse by those who merely fail to file a return. Rather, the overall policy presented is quite consistent with traditional jurisprudence in this area, *i.e.* the emphasis is upon providing taxing authorities with a full and fair *opportunity* to collect their taxes. And as previously discussed, that opportunity can be afforded so long as a return is filed, regardless of whether filed by the debtor or the taxing authority in his stead.

Nonetheless, in its specific discussion of proposed Section 523, the Senate Finance Report includes language which, upon initial reading, might be construed to support an absolute requirement of debtor tax return filing, to wit:

> Taxes that are excepted from discharge under S. 2266 (as well as under present law) include claims against the debtor which receive priority in distribution of property of the estate.

> Certain prepetition tax liabilities are not given priority in distribution from property of the estate, but under S. 2266

would survive as liabilities of the debtor after the case. This category includes (1) taxes for which the *debtor* had not filed a return as of the bankruptcy petition, or for which a return had been filed beyond its due date but within 3 years before the petition, and (2) taxes with respect to which the debtor filed a fraudulent return, or as to which he fraudulently attempted to evade or defeat any tax.[19] The standard to be applied is the same as that used for asserting the civil fraud penalty under the applicable tax law.

---

[19] The bankruptcy policy for this treatment is that it is not fair to penalize private creditors of the debtor by paying out of the "pot" of assets in the estate tax liabilities arising from the debtor's *deliberate misconduct.* On the other hand, the debtor should not be able to use bankruptcy to escape *these kinds of taxes.* Therefore, these taxes have no priority-in-payment from the estate but would survive as continuing debts after the case.

Senate Finance Report, at 22 (emphasis supplied). While this passage (hereafter the "Finance Passage") and its footnote (hereafter, "Footnote 19") arguably lend some support to the argument for a requirement of debtor return filing, they do not do so nearly as forcefully as may first appear.

The Court notes initially that the Finance Passage merely parrots the return filing language of the Senate Judiciary Clause, *i.e.* "... taxes for which the *debtor* had not filed a return ...." (emphasis supplied). Hence, for the same reasons that this Court views the debtor specification of the Senate Judiciary Clause as unenlightening, so likewise does it view its re-appearance in the Finance Passage.

Footnote 19, however, does include language not found in the Senate Judiciary Report. This additional language might allow one to posit that because Footnote 19 provides a policy justification for a requirement of debtor return filing—"that it is not fair to penalize private creditors ... [with] liabilities arising from the debtor's deliberate misconduct"—the debtor specification of the Finance Passage is unlikely to have been unconscious or inadvertent. A fundamental weakness in such reasoning, however, is its assumption that Footnote 19 was intended to address return filing at all. That is not necessarily so. Rather, given its placement at the end of a sentence containing two independent, numbered clauses, Footnote 19 likely modifies only the second such clause (referring to fraudulent evasive conduct), not the first (dealing with the mere failure to file a return). Reading Footnote 19 to modify only the second independent clause also facilitates the Court's harmonization of the Senate Finance Report's concept of "deliberate misconduct" with the Senate Judiciary Report's notion of "wrongdoing".

Although a debtor's passive non-filing behavior *might* be fairly termed "misconduct" in its most expansive sense, *i.e.* not normative conduct, Footnote 19's description of tax debt arising from a debtor's "*deliberate* misconduct" (emphasis supplied) is not necessarily broad enough to implicate such behavior. The most appropriate definition of "deliberate" in the present context is: "characterized by ... careful and thorough consideration". *Merriam–Webster's Collegiate Dictionary* 305 (10th ed.1999). Consequently, this Court concludes that the conduct involved in the instant proceeding—a mere passive failure to file a return [16]—is not embraced by the

---

**16.** The stipulated "record" of the instant summary judgment matter does not speak to the state of mind of the Debtor. Nor does the IRS assert *willful evasion* by the Debtor. *See* fn. 4, *supra.* Thus, for purposes of the present matter the Court must consider the relevant conduct to be a mere failure to file

34

term "deliberate misconduct", and thus not within the Senate Finance Committee's intended scope of tax non-dischargeability as explained in Footnote 19.

### iv. Summary of Legislative Materials

█ In the present case the utility of examining legislative materials lies in its potential to demonstrate a Congressional intention contrary to the apparent plain meaning of Code Section 523(a)(1)(B). A court's journey into legislative history is often a perilous, and ultimately unenlightening process. Such is the case here. Unlike the litigants which appear before them, courts do not have the leisure to cite and rely upon isolated phrases or passages from selected legislative sources. Instead, the Court must review the extant legislative record in its entirety to appreciate the development of the law over time, and attempt to discern the intention of Congress as a whole.

A holistic analysis of the relevant legislative action and materials—from Bankruptcy Act through enactment of Code Section 523(a)(1)—permits this Court to discern a consistent Congressional objective to afford taxing authorities with a fair opportunity to assess and collect taxes prior to allowing their discharge in bankruptcy. In furtherance of that objective it does not appear that Congress deemed personal filing of tax returns by debtors to be a critical component of the statutory scheme; and such immateriality is plainly expressed in the non-personal language of Section 523(a)(1)(B)(i).

While there is language in the reports of the two Senate Committees which arguably reflects an intention to condition dischargeability on *personal* tax return filing (hereafter, the "Isolated Passages"), such interpretation is retrograde; that is to say, if interpreted as suggested by the IRS's authorities, the Isolated Passages (i) would run counter to the law's historical, non-punitive pragmatism; (ii) are not in harmony with the Senate Reports' more generally expressed philosophy; and (iii) are not echoed in the legislative materials of the House of Representatives. As a result, the Court finds no compelling evidence that Congress intended to alter pre-Code law to require that the debtor *personally* file returns as a prerequisite to tax dischargeability.[17]

---

returns, unattended by evasive intent or even knowledge of the legal requirement.

17. The Court notes with interest the language of an amendment to Section 523(a)(1), which has appeared consistently in recently-proposed bankruptcy reform legislation. *E.g., Bankruptcy Abuse and Consumer Protection Act of 2005*, Section 714 (for purposes of Bankruptcy Code subsection 523(a)(1), "the term 'return' ... does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law."). The negative implication of such an amendment is that present law needs to be modified or clarified in order to explicitly require debtor-filed returns as a prerequisite to dischargeability. In light of the fact that courts, to date, have consistently construed existing law in favor of taxing authorities on the question of the sufficiency of Sub-

stitute Returns, it is curious that a modifying or clarifying amendment would be deemed necessary. Although the origin and purpose of the proposed amendment is not clear from the available history of the reform legislation, it appears to have had its origin in the Tax Advisory Committee of the National Bankruptcy Review Commission. This Court can only speculate that a taxing authority with membership on the Tax Advisory Committee perceived the weakness in the decisional bases of the extant case law, and deemed it prudent to propose a prophylactic amendment, rather than risk future adverse rulings.

The observations of this footnote have not formed any part of the basis of this Court's resolution of the instant matter. If they had, however, they would further bolster the conclusions otherwise drawn by the Court in this Memorandum of Decision.

Even if this Court were to attach conclusive weight to the Isolated Passages in favor of the position of the IRS, the most that could be safely concluded is that *one* chamber of Congress—the Senate—enacted Section 523(a)(1)(B) with an intended meaning different from that plainly expressed by the text. In our bicameral system, such a conclusion would be insufficient to carry the day for the IRS, especially in view of the courts' imperative toward strict construction of dischargeability legislation.

### c. Public policy considerations.

The IRS devotes much of its written argument to the deleterious effects of return filing failure upon this country's system of income self-reporting. Indeed, a debtor's tax return "implements the system of self assessment which is largely the basis of our American scheme of income taxation." *Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944). It is suggested then that a debtor return filing condition to the dischargeability of taxes serves a worthy public policy goal of encouraging debtors to honor their legal obligation to file tax returns; or, stated conversely, that the recognition of the sufficiency of a Substitute Return under Section 523(a)(1)(B) would create a *dis*incentive for lawful behavior among tax debtors. *See, e.g., Pruitt,* 107 B.R. at 766. This type of argument does little to advance the present debate since, *inter alia,* (i) it lacks a substantial basis in the relevant legislative history, (ii) it fails to appreciate the substantial positive incentive toward return filing which exists even under a Substitute Return-permissive statutory scheme; and (iii) it ignores the fact that a debtor can frustrate the self-reporting system even under the IRS's reading of Section 523(a)(1)(B).

Undoubtedly a dischargeability scheme which requires a debtor to file a tax return *personally* would create an incentive toward return filing. However, in discerning the question presently before the Court, a more complete policy analysis is required. Namely, even assuming the salience of a policy consideration not identified in the legislative history of Section 523,[18] the more probative question becomes whether a requirement of personal return filing is *necessary* to serve the policy goal, or whether, instead, the law as construed by the Debtor also provides strong incentives toward return filing.

Under the Debtor's construction of Section 523(a)(1) there is no absolute requirement of *personal* return filing as a condition of tax dischargeability. Yet there is no lack of incentive for a bankruptcy debtor to file his own tax returns well prior to the filing of his bankruptcy petition. Consider the example of an impecunious potential bankruptcy debtor who has a yet-unassessed tax liability, and who desires to enhance the prospect of ultimately discharging that debt. Such a debtor would be well-advised to file a tax return, even if he interpreted Section 523(a)(1)(B) as permitting a Substitute Return to suffice as a filed return. This is true because, even though a Substitute Return will suffice as a filed return under Section 523(a)(1)(B), the *timing* of its filing is wholly within the control of the Treasury Secretary. Since subsection (ii) of Section 523(a)(1)(B) conditions tax dischargeability upon a return—whether the debtor's or the Treasury Secretary's—filed more than two years prior to the bankruptcy petition, no

---

18. This Court's review of the legislative history of Section 523(a)(1) reveals no explicit Congressional aim to utilize non-dischargeability as a lever to encourage the filing of tax returns. Such rationale thus finds its origin only in the courts and the parties to litigation.

reasonable potential bankruptcy debtor would cede the return filing timetable to the IRS. Rather, he would be well-advised to file his own return no later than two years before the date of his anticipated bankruptcy. As a practical matter, few debtors are capable of meaningful bankruptcy planning two or more years prepetition; hence, in reality, a compelling incentive exists for *immediate* return filing upon a debtor's appreciation of the return filing requirements of Section 523(a)(1)(B), irrespective of one's view of the sufficiency of a Substitute Return.[19]

The IRS's stated concern for the administrative integrity of the tax system is also shortsighted. In judging the extent and importance of potential frustration of the IRS's administrative procedures, one must compare the effects of both of the proffered constructions of Section 523(a)(1)(B). In assaulting the Debtor's construction on policy grounds, the IRS credibly details the various procedures which are unnecessarily engaged by a debtor's failure to file a tax return. However, it seemingly chooses to ignore the fact that its own reading of Section 523(a)(1)(B) also allows a debtor to waste and frustrate administrative resources, yet still receive a discharge of the subject taxes. This is possible because under Section 523(a)(1)(B)(ii), a debtor with a seriously delinquent tax return can still discharge the associated tax so long as the delinquent return is filed more than two years prior to the petition date, potentially well after IRS administrative procedures have been engaged.

## V. CONCLUSION

There is no genuine issue of material fact with respect to the matter at bar.

For purposes of this summary judgment matter, the parties have agreed upon a simple and concise *Joint Stipulation of Facts*. Those agreed facts present the circumstance of a debtor who failed to file federal income tax returns for Tax Years 1991 and 1992, and for whom, upon that default, the Treasury Secretary filed Substitute Returns. The limited legal issue presented by the IRS is whether a Substitute Return is sufficient as a filed return for purposes of Bankruptcy Code Section 523(a)(1)(B)(i).

In determining whether the IRS is entitled to judgment as a matter of law, this Court is under a duty to construe Section 523(a)(1) *narrowly* in favor of the Debtor. That obligation serves only to strengthen a conclusion which the Court would reach even in the absence of such "debtor presumption" applicable to dischargeability exceptions.

The non-personal language of Bankruptcy Code Section 523(a)(1)(B) plainly admits to the possibility of a return filed by an entity other than the Debtor, such as the Treasury Secretary via a Substitute Return. IRC Section 6020(b)(2) likewise endorses the use of a Substitute Return for the purpose of a dischargeability determination, since such use is plainly a "legal purpose".

Further, the plain language of the Bankruptcy and Internal Revenue Codes are not undermined by a thorough and holistic examination of the legislative history relevant to Section 523(a)(1)(B). Instead, the relevant legislative materials reveal Section 523(a)(1)(B) to be consistent with an historical scheme under which the bank-

---

**19.** The Debtor's construction of Section 523(a)(1) also does not insulate him from potential criminal liability which, under appropriate circumstances, can flow from a failure to file a tax return. This liberty risk, however remote under the stipulated facts of this matter, also serves to encourage compliance with the Internal Revenue Code's filing directives.

 

ruptcy law aims not to penalize a debtor's mere failure to file a return, but focuses instead upon the pragmatic and equitable goal of providing the taxing authority with a full and fair opportunity to assess and collect the subject tax prior to allowing its discharge in bankruptcy.

Finally, as discussed at length herein, the Court's construction of Section 523(a)(1)(B) does not offend worthy public policy goals. To the contrary, under the Court's view, no rational prospective debtor would consciously defer to the Treasury Secretary's discretion in filing a Substitute Return. An absolute requirement of personal return filing as a condition of dischargeability adds little, if any, coercive power to the strong incentives toward return filing otherwise existing in the law.

For the foregoing reasons this Court determines that the Treasury Secretary's Substitute Returns are filed "returns" within the meaning of Bankruptcy Code Section 523(a)(1)(B). Accordingly, the motion of the Defendant IRS for summary judgment (Doc I.D. No. 13) shall be **DENIED** by separate order. Given that the Plaintiff Debtor has not filed a cross-motion for summary judgment, *inter alia*,[20] judgment shall not enter in his favor at this time.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

The above-captioned motion for summary judgment filed by the Defendant (hereafter, the "Motion") came before the Court upon a stipulated record and briefing of the parties. The Court having now fully considered the submitted material, and the fruits of its independent research, and having issued this day its *Memoran-*

*dum of Decision on Motion for Summary Judgment,* in accordance with which—

**IT IS HEREBY ORDERED** that the Motion is **DENIED**.

---

20. It also does not appear that the stipulated record or the state of the pleadings permit the Court to conclude that the subject Substitute

Returns were filed two years or more prepetition, so as to permit dischargeability despite the limitation of Section 523(a)(1)(B)(ii).